## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAMMY BILLIOT,** *on behalf of minor child* **T. Q.,** | **CI CIVIL ACTION:** |
| ***Plaintiff*** | **JUDGE:** |
| **VERSUS** | **MAGISTRATE JUDGE:** |
| **BRYAN P. ZERINGUE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS THE CHIEF OF THE THIBODAUX POLICE DEPARTMENT; CAPTAIN JOHN SUTTON, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; OFFICER JEREMY PAUL GAUDET, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; AND THE CITY OF THIBODAUX** | **JURY TRIAL DEMAND** |
| ***Defendants*** | |

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Petitioner, **TAMMY BILLIOT**, on behalf of minor child, T.Q., who, with full reservation of rights to plead further herein, respectfully avers as follows:

### INTRODUCTION

1.  This is a civil action seeking damages against Defendant Captain John Sutton, Jr., of the Thibodaux Police Department ("TPD"), Defendant Jeremy Paul Gaudet of the TPD, and Bryan P. Zeringue the leader of that Office, Chief of the Thibodaux Police Department, and the City of Thibobaux. Defendant Captain John Sutton, Jr., choked and restrained a fourteen-year-old, approximately 5'

3" in height and weighing approximately ninety (90) pounds boy (named "T.Q."). T.Q. had done nothing other than wait near the restroom at the Fireman's Fair awaiting for friends.

**PARTIES**

2. Plaintiff made herein is **TAMMY BILLIOT** (hereinafter referred to as **"Mrs. Billiot"**), who is a citizen of Louisiana, a person of the full age of majority, residing and domiciliary of the Eastern District of Louisiana.

3. Mrs. Billiot is the aunt and legal guardian of T.Q., a fourteen-year-old, approximately 5' 3" in height and weighing approximately ninety (90) pounds minor child.

4. Made Defendants herein are the following:

   A. **THE CITY OF THIBODAUX**, a municipality of the State of Louisiana, located in the Parish of Lafourche, State of Louisiana, with the capacity to sue and be sued (hereinafter referred to as "The City of Thibodaux");

   B. **BRYAN P. ZERINGUE,** in his individually, as well as his official capacity as the Chief of the Thibodaux Police Department, Municipality of Thibodaux, State of Louisiana, located in the Parish of Lafourche. As Chief of Police of the Thibodaux Police Department, Defendant Zeringue was and is a final policy maker for the Department (hereinafter referred to as "Defendant Zeringue");

   C. **JOHN SUTTON, JR.**, in his individual, as well as his official capacity as a Captain employed by the Thibodaux Police Department and believed to be a resident of the Parish of Lafourche, State of Louisiana (hereinafter referred to as "Defendant Sutton");

   D. **JEREMY PAUL GAUDET**, in his individual, as well as his official capacity as an Officer employed by the Thibodaux Police Department and believed to be a resident of the Parish of Lafourche, State of Louisiana (hereinafter referred to as "Defendant Gaudet");

2

5.  That said Defendants are justly and truly indebted unto the petitioners made Plaintiff in Paragraph 2, individually, jointly and *in solido*, for such damages as will fully and fairly compensate petitioner, all right with legal interests thereon from the date of judicial demand until paid, for costs of expert witnesses retained, for attorney fees, and for all costs of these proceedings for the following reasons, set forth starting in Paragraph 58.

## JURISDICTION AND VENUE

6.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) because Plaintiff's claims of federal civil rights violations arise under the Constitution and laws of the United States, including 28 U.S.C. § 1983.

7.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1367, wherein Plaintiff also invokes supplemental jurisdiction over claims under state constitutional and statutory law.

8.  Declaratory relief is authorized by 28 U.S.C. § 2201. A declaration of law is necessary to determine the respective rights and duties of the parties.

9.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to Plaintiff's claims arose in the Eastern District of Louisiana, and the acts and omissions sued upon herein occurred in Lafourche Parish, and substantial damages suffered by Plaintiff occurred in Lafourche Parish. Further, the named Defendants are domiciled in the Eastern District of Louisiana.

## Relevant Factual Background

10. The City of Thibodaux is the largest municipality in Lafourche Parish and the location of the parish seat.

3

11. The most recent census estimates that the population in corporate limits is about 16,000; however, due to the City of Thibodaux being an economic, medical, educational and cultural center, it draws people from the greater surrounding areas.

12. The City of Thibodaux is a local governmental subdivision and a municipality as defined by Article VI, Section 44(1) and (3) of the Louisiana Constitution of 1974.

13. The City operates under this Home Rule Charter under the authority of Article VI, Section 4 of the Constitution.

14. Pursuant to its Home Rule Charter, the City of Thibodaux has the right and authority to exercise the police power.

15. Mr. Kevin Clement is in charge of appointing the Chief of Police who is responsible for the prevention of crime; assistance to the courts and other law enforcement officials; and the maintenance of peace and order of the City. At all times relevant herein, Chief Zeringue is designated as the Chief of Police of the Thibodaux Police Department.

16. Since 1883, Thibodaux Firemen's Fair has been held annually to raise funds for the Thibodaux Volunteer Fire Department, the only fire department in the parish.[1] Since its inception, Thibodaux's Fire Department has depended upon the money raised at the Firemen's Fair for a significant portion of its annual budget.

17. As of present day, the Thibodaux Firemen's Fair attracts "more than 50,000 people each year and raising hundreds of thousands of dollars for the local fire department."[2]

18. At the time the events herein, T.Q., had been residing with his guardian, aunt, Mrs. Tammy Billiot at 200 Mobile Estates Drive, Gray, Louisiana.

---

[1] *About the Fair,* https://www.firemensfair.com/about (last accessed Apr. 28, 2025).
[2] *Id.*

4

19. On or about Saturday, May 4, 2024, T.Q., attended the Thibodaux Fireman's Fair located at 800 Parish Road with a friend.

20. T.Q., was new to this Thibodaux area and had never attended such a festival. He and his friend met up with acquaintances from school and neighborhood

21. At some point at the T.Q., his friend and another teen got into a pushing match when two officers intervened and told the group to come to a tent.

22. At a certain point those unnamed acquaintances, requested T.Q., to hold a black backpack.

23. T.Q., not being from the area, and this being his first Thibodaux Fireman's Fair was unaware of any prohibition of backpacks, did not object to this seemingly normal request.

24. While waiting for his friend to return, at approximately 9:20 p.m. Defendant Sutton approached him and began an illegal interrogation of a minor child without a parental guardian present,[3] as shown below:



**D04_20240504212000.mp4 at 21:20:26**

---

[3] Prior to questioning, an individual must be advised of his right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). *STATE OF LOUISIANA v. KESSLER KING*, 2023-1192 (La. App. 1 Cir. 9/20/24).

25. Defendant Sutton asked T.Q., whether or not he was the owner of this black backpack, which he replied he was not.

26. At Captain John Sutton's request to examine the black backpack, T.Q., complied willingly and without issue, not knowing the contents within the black backpack or the legal ramifications of answering Captain John Sutton's questions.

27. The video footage clearly portrays T.Q., cooperating, not running, not being argumentative, as shown below:



**D04_20240504212000.mp4 at 21:20:43**

28. Despite already being questioned and detained without ever having his *Miranda Rights* read to him, without provocation, and without any explanation, Defendant Sutton aggressively attempted to snatch away T.Q.'s, cellphone—a lifeline to a typical fourteen-year-old child, as shown below:



**D04_20240504212000.mp4 at 21:21:45**

29. In Louisiana, a child's confession is inadmissible unless the State proves beyond a reasonable doubt that the statement was given freely and voluntarily. *State in the Interest of W.B.*, 16–0642, p. 8 (La. App. 4 Cir. 12/7/16), 206 So.3d 974, 980.

30. Further, a suspect is considered to be "in custody" when he is placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. *State v. Stewart,* 13-0779, p. 10 (La. App. 4 Cir. 1/22/14), 133 So.3d 166, 172.

31. Up to this point, T.Q., did not have any reason to think him being detained or being arrested.[4]

32. As interference with an officer's investigation is insufficient to establish the offense of resisting an officer. *State v. Wilson,* 35,963 (La. App. 2 Cir. 6/14/02); 822 So.2d 20.

33. Exercising his legal right as a citizen, he resisted his unlawful seizure of his phone and arrest. S*tate in Interest of Lewis*, 386 So.2d 1079, 1087 (La. 3 App. Cir. 1980).

34. Thereafter, Defendant Sutton placed T.Q., in a chokehold for several minutes while other officers and general public watched in horror.

35. It is important to note that the use of choke holds and carotid holds are prohibited, except when the officer reasonably believes he or another person is at risk of great bodily harm or when deadly force is authorized. La. R.S. § 40:2553.

---

[4] Essential to conviction of resisting arrest is defendant's knowledge of his arrest or impending detention. *State v. Freeman,* 411 So.2d 1068, 1070 (La.1982). A person may resist an unlawful arrest in order to prevent an illegal restraint of liberty to the extent necessary under the circumstances. *White v. Morris,* 345 So.2d 461 (La.1977); *Melancon v. Trahan,* 94–26 (La. App. 3 Cir. 10/5/94); 645 So.2d 722, *writ denied,* 95–0087 (La.3/10/95); 650 So.2d 1183. Additionally, should a police officer with no probable cause to believe that a person has committed a crime use physical violence to overcome the person's resistance, his actions constitute a battery. *Norrell v. City of Monroe,* 375 So.2d 159 (La. App. 2 Cir.1979). However, because he did not commit that offense, he could not be legally arrested for it; moreover the State did not allege that he was arrested for any other offense. *State v. Manuel,* 2006-0486, p. 5 (La. App. 4 Cir. 11/21/06); 946 So.2d 245, 248, *writ denied,* 2006-2981 (La. 9/14/07); 963 So.2d 994

36. Once Defendant Sutton placed T.Q., over the ice chest, he and Defendant Gaudet used the handcuffs to pull him, causing serious pain and injuries to T.Q.'s shoulders, neck, back and wrists.

37. After detaining T.Q., without any lawful cause for more than one hour and thirty (30) minutes, and threating jail time.

38. Further, Defendant Sutton and Defendant Gaudet proceeded to charge him with resisting arrest, and various other "pretextual" charges: TCO-7-91.6 - Unlawful Distribution of Sample Tobacco Products, Alternative Nicotine Products, Or Vapor Products To Persons Under Age Twenty-One; Penalty; TCO 7-108 – Resisting An Officer; TCO 7-1001.3 - Prohibited Acts Generally Drug Paraphernalia.

39. Thereafter, at 10:46 p.m., T.Q., was released to Mrs. Billiot and a JV release form was completed.

40. At no time did the Defendant Gaudet, attempt to intervene to stop Defendant Sutton from continuing to violate the rights of T.Q.

41. As a result of the incident, T.Q., suffered physical injuries to his shoulder, neck, back and arms, and severe emotional distress, including fear, humiliation and anxiety.

42. Petitioner submits that there never existed any probable cause or reasonable suspicion to arrest T.Q., Defendant Sutton and Defendant Gaudet used excessive force in making the unlawful arrest of T.Q., and they acted solely out of malice and intentional indifference to the rights of the T.Q.

43. Furthermore, the actions of the Defendant Sutton and Defendant Gaudet constitute negligence in the treatment of the T.Q. and a simple investigation would have shown that there was no probable cause to detain and/or arrest and/or assault T.Q., and the Defendant Sutton and

Defendant Gaudet failed to conduct any investigation into the facts and circumstances prior to attacking and arresting T.Q., among other acts of negligence, and such action and/or inaction is therefore actionable for negligence under Louisiana law, specifically La. C.C. 2315, 2315.1 and 2315.2.

44. Shortly thereafter, On May 16, 2024, less than a week, T.Q., received a letter stating that he was selected for "Pre-Trial Intervention" for "(1) Resisting An Officer (2) Drug Paraphernalia and (3) Unlawful Vapor Products."

45. The Resistance Review Board met on May 30, 2024, with TPD due to a complaint and ***all four members found*** that the Defendant Sutton of the City of Thibodaux Police Department violated the juvenile's rights and used excessive force arising out of an incident.

46. On the date of T.Q.'s answering of State's juvenile petition on August 13, 2024, was informed by the State that the only charges presently being charged by the State is resisting arrest under La. R.S. 14:108 Resisting an officer.

47. At all times described herein, the Defendants were acting under color of law in their capacities as police officers for the City of Thibodaux.

48. At all times described herein, the Defendants' conduct was intentional and malicious. In the alternative, the Defendants' conduct was committed with deliberate indifference and/or reckless disregard for the T.Q.'s federal constitutional rights and specifically violated: (1) his Fourth Amendment Rights to be free from unreasonable seizure; (2) his due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution, and (3) the cruel and unusual punishment prohibition of the Eighth Amendment of the United States Constitution.

49. Furthermore, T.Q. submits that the Defendant Sutton and Defendant Gaudet never had any reasonable basis for believing that a crime had been committed or was being committed at the time of the arrest, and they never had any objectively reasonable cause to detain T.Q., the officers acted in bad faith, and their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known, and therefore said officers are not entitled to qualified immunity for their actions.

## CAUSES OF ACTION

**Count One: 42 U.S.C. §1983--Retaliation in Violation of 1st Amendment of the United States Constitution**
(Defendant Sutton and Defendant Gaudet, Thibodaux Police Department, City of Thibodaux)

50. Plaintiff incorporates by reference the allegations already made in ¶¶ 1-49, above.

51. "To state a claim for relief in an action brought under 42 U.S.C. § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999).

52. When alleging a First Amendment retaliation claim, a Plaintiff must show "(1) that [plaintiff's] speech was protected; (2) defendant's alleged retaliatory action adversely affected the plaintiffs constitutionally protected speech; and (3) a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." *See Dickerson v. Duncan,* Civil Action No. 7:19CV00802, 2020 U.S. Dist. LEXIS 2543, at 6-7 (W.D. Va. Jan. 7, 2020) (internal quotations omitted) (citing *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685-86 (4th Cir. 2000)).

53. Defendants Sutton, Gaudet, Thibodaux Police Department, City of Thibodaux, while acting under the color of the law, violated the T.Q.'s constitutional rights by issuing a JV release form/arresting him when he did not speak words to/or cause any resistance of arrest.

54. T.Q., was engaged in protected speech, as Defendants clearly acknowledge in more than once during the encounter.

55. Defendants took retaliatory action against the T.Q. that adversely affected the T.Q.'s constitutionally protected speech, when he was issued a JV release form/arrested for no other reason of not speaking to Defendant Sutton.

56. These actions were directly motivated by the T.Q. in not understanding he was in custody speech highlighting the double standards and biased reporting conducted by said Defendants.

57. These retaliatory acts violated the constitutional rights guaranteed to T.Q. by the First Amendment of the United States Constitution. Defendants' action were not taken in good-faith and were in violation of clearly established law.

58. Defendants lacked probable cause when he took these retaliatory actions against the Plaintiff.

59. Nevertheless, Defendants violated T.Q.'s First Amendment rights to the freedom of speech when he was issued JV release form/arrested for not using words to see T.Q.'s phone and as no words were exchanged between Defendant Gaudet and him leading to him being in handcuffs.

60. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the T.Q. has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

61. Because of Defendants' actions, and possibly other employees, agents, and/or representatives of the Thibodaux Police Department, and/or an employee of City of Thibodaux, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [T.Q.]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.,* No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at \*12 (D. S.C. Jun. 12, 2018) (*quoting Smith v. Wade,* 461 U.S. 30 (1983)).

**Count Two: 42 U.S.C. §1983-- Excessive Force in Violation of the Fourth Amendment**
<u>(Defendant Sutton and Defendant Gaudet)</u>

62. Plaintiff incorporates by reference the allegations already made in ¶¶ 1-61, above.

63. Defendant Sutton and Defendant Gaudet, while acting under the color of the law, violated T.Q.'s constitutional rights by unreasonably seizing T.Q., as described herein throughout, which resulted in T.Q.'s injuries.

64. Defendants' actions violated the constitutional rights guaranteed to T.Q., by the Fourth Amendment of the United States Constitution.

65. Defendant Sutton and Defendant Gaudet, at all relevant times, was acting with deliberate indifference and under the color of state law in their capacity as a police officers of TPD, and their acts or omissions were conducted within the scope of their official duties or employment.

66. With no legal cause, Defendant Sutton used repeated excessive force against T.Q., Among other things, Defendant Sutton subjected T.Q., to at least three instances of excessive force.

67. In addition to the reasons listed below, the force was excessive because (1) Defendant Sutton knew the backpack was not his and which was a minor, and not violent, crime; (2) Defendant Sutton and Defendant Gaudet knew that T.Q., was a juvenile; (3) Defendant Sutton and Defendant Gaudet had received no report that T.Q., was armed, let alone violent; (4) Defendant

Sutton and Defendant Gaudet never saw a weapon; and (5) T.Q., never posed any threat—let alone a serious threat—of harm to Defendant Sutton and Defendant or any third party.

68. The first instance of excessive force occurred when Defendant Sutton stopped T.Q., at started choking him with no prior verbal warning. This use of force was unreasonable for the reasons listed above and because Defendant Sutton never provided an opportunity for T.Q., to comply with any "stop" command unaccompanied by the threat of lethal force. It is clearly established law that law enforcement cannot use choke holds and carotid holds are prohibited, except when the officer reasonably believes he or another person is at risk of great bodily harm or when deadly force is authorized. La. R.S. § 40:2553.

69. Further Thibodaux Police Department Policy Manual, Policy 300 notates as follows: 300.3.6 RESPIRATORY RESTRAINTS: The use of a respiratory restraint, also known as a chokehold, is limited to circumstances where deadly force is authorized and if applied, is subject to the same guidelines and requirements as a carotid control hold (La. R.S. 40:2553).

70. The second instance of excessive force occurred when Defendant Sutton and Defendant Gaudet violently shoved T.Q. onto the ice chest. This use of force was unreasonable for the reasons listed above and because T.Q. was already complying with Defendant Sutton and Defendant Gaudet's demands. It is clearly established law that law enforcement cannot use violent force against an individual who is not resisting and has signaled surrender.

71. Defendant Sutton and Defendant Gaudet's conduct was objectively unreasonable in light of clearly established law providing that individuals have a right to be free from excessive force.

72. Defendants are not entitled to qualified immunity for the complained-of conduct because this conduct was objectively unreasonable and violated T.Q.'s clearly established constitutional rights.

73. Defendant Sutton and Defendant Gaudet conduct deprived T.Q., of the rights, privileges, and immunities afforded to him under the Constitution and laws of the United States, including those under the Fourth and Fourteenth Amendments to the Constitution.

74. At all relevant times, Defendant Sutton and Defendant Gaudet acted under color of state law. Both Defendant Sutton and Defendant Gaudet negligently and/or intentionally violated the health, welfare, and Constitutional and other legal rights of T.Q., in the following, non-exclusive regards:

    A. Both Defendant Sutton and Defendant Gaudet used unnecessary and excessive force and physical violence to restrain, detain, and/or arrest the petitioner, T.Q.;

    B. Both Defendant Sutton and Defendant Gaudet falsely restrained, detained, and/or arrested the plaintiff without any probable cause, warrant or other statutory authority whatsoever;

    C. Both Defendant Sutton and Defendant Gaudet wrongfully and unjustifiably injured the plaintiff and traumatized him physically and mentally;

    D. Both Defendant Sutton and Defendant Gaudet unlawfully restrained the plaintiff;

    E. Both Defendant Sutton and Defendant Gaudet failed to follow proper police procedures;

    F. Acting under color of state law in violating (1) T.Q.'s Fourth Amendment Rights to be free from unreasonable seizure; (2) T.Q.'s due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution, and (3) T.Q.'s right not to suffer cruel and unusual punishment, as provided in Eighth Amendment of the United States Constitution;

75. Furthermore, the failure of the other officers whose names are currently unknown, to intervene

on behalf of Q.T., to protect him from the actions precipitated by the aggressor officers and their failure to even attempt to render assistance to T.Q., or to stop the unreasonable, unnecessary and unlawful use of force also constitutes deliberate indifference to T.Q.'s constitutional rights and violated T.Q.'s due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution.

**Count Three: Monell Violation**
**42 U.S.C. § 1983 – Monell Liability for Failure to Supervise, Investigate, and Decertify**
<u>(Against Defendant Zeringue, Thibodaux Police Department, City of Thibodaux)</u>

76. Plaintiff incorporates by reference the allegations already made in ¶¶ 1-75, above.

77. Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

78. The elements of a *Monell* claim are: (1) deprivation of a federal right; (2) some governmental action can be traced to the deprivation, i.e., policy or custom; (3) policy or custom demonstrating the governmental entity's fault, i.e., deliberate indifference; and (4) municipal action that was the moving force behind the federal violation. *Dean v. Wexford Health Service, Inc.,* 18 F.4th 214, 235 (7th Cir. 2021).

79. Defendant Zeringue who is considered the final policy maker for the Thibodaux Police Department, which is an agency of the City of Thibodaux.

80. Defendant Zeringue was responsible for supervising, investigating, and decertifying TPD

officers, including Defendant Sutton and Defendant Gaudet.

81. Defendant Zeringue failed to investigate Defendant Sutton and Defendant Gaudet's conduct.

82. When a complaint was made regarding the actions of Defendant Sutton against T.Q., Defendant Zeringue requested that Use of Force Review Board be assembled, as attached as **Exhibit A.**

83. The Resistance Review Board met on May 30, 2024, and ***all four members found*** that the Captain John Sutton of the City of Thibodaux Police Department violated the juvenile's rights and used excessive force arising out of an incident, as attached as **Exhibit B.**

84. Further, Thibodaux Police Department Policy Manual, Policy 300 notates as follows: 300.3.6 RESPIRATORY RESTRAINTS: The use of a respiratory restraint, also known as a chokehold, is limited to circumstances where deadly force is authorized and if applied, is subject to the same guidelines and requirements as a carotid control hold (La. R.S. 40:2553).

85. On information and belief, Defendant Zeringue was aware, or should have been aware, due to another officer's complaint, that Defendant Sutton engaged in police misconduct when he used excessive force to arrest T.Q. But Defendant Zeringue failed to investigate Defendant Sutton for this conduct. In fact, he stopped his Internal Affairs Officer from further investigating this matter.

86. This is because—consistent with TPD's policy to not keep use-of-force records and complaints for excessive force—on information and belief, TPD simply does not investigate use-of-force claims.

87. Further, upon information and belief, Defendant Zeringue ordered the removal of the use of force board from the policy manual after this incident.

88. Consistent with and as a result of City of Thibodaux's customs, patterns, practices, and/or procedures, Defendants unjustifiably and unlawfully violated T.Q.'s constitutionally protected rights.

89. In addition, Defendant Zeringue's failure to investigate this and prior excessive force cases is part of his failure to implement proper policies and procedures regarding the use of excessive force amongst juveniles.

90. As a direct and proximate result of the City of Thibodaux customs, patterns, practices, and/or procedures, as stated herein above, the T.Q.'s rights guaranteed to him by the Fourth Amendment of the United States Constitution as well as state constitution were violated.

91. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the T.Q. has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

92. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the City of Thibodaux, through its policymaker, Defendant Zeringue (and possibly other policymakers whose identities are not yet known) is liable for the harms and losses sustained by T.Q.

93. As such, Defendant Zeringue, in his official capacity, and the City of Thibodaux are liable for the violation of the T.Q.'s constitutional rights, as described herein.

## Count Four: Intentional Infliction of Emotional Distress

### (All Defendants)

94. Plaintiff incorporates by reference the allegations already made in ¶¶ 1-93, as if fully set forth herein.

95. Defendant committed Intentional Infliction of Emotional Distress ("IIED") against T.Q. by seeking and obtaining a false police reports to charge on false grounds and by continuing to pursue and promulgate these claims in the public arena despite knowing they were false.

96. T.Q. has suffered and will continue to suffer severe emotional distress from these groundless assaults on his character.

97. Upon information and belief, Defendants and other named and unnamed defendants knowingly and willingly assisted Defendant Sutton in committing these tortious actions.

98. Accordingly, Defendants, are liable for the IIED against T.Q. in relative shares to be determined in accordance with either: (a) comparative fault under La. Civ. Code art. 2323; or (b) as solidary or joint tortfeasors under La. Civ. Code art. 2324.

### Count Five: Battery and Assault

### (Defendant Sutton and Defendant Gaudet)

99. Plaintiff incorporates by reference the allegations already made in ¶¶ 1-98, as if fully set forth herein.

100. Defendants intended to use force to cause physical injury to T.Q., and did in fact use force to cause injury to T.Q.

### Count Six: *Respondeat Superior*

101. Plaintiff incorporates by reference the allegations already made in ¶¶ 1-101, above.

102. All Defendants' acts described herein were undertaken in the course and scope of their employment with the Thibodaux City. Accordingly, the Thibodaux City is liable for all state law torts alleged herein.

**Count Seven: Vicarious Liability**

103.    Plaintiff incorporates by reference the allegations already made in ¶¶ 1-104, above.

104.    The Thibodaux City is vicariously liable for Defendant Sutton and Defendant Gaudet's tortious conduct (Counts 4-5 made pursuant to state law) identified in this Complaint because Defendant Sutton and Defendant Gaudet's was acting within the course and scope of his employment at the time they committed these wrongs.

## DAMAGES

105.    Mr. Ordonye suffered anxiety, mental anguish, embarrassment, and humiliation as a result of the extreme and outrageous actions of Defendants, his person and property and the deprivation of his liberty. In addition to mental anguish, humiliation, and embarrassment, Mr. Ordonye has suffered from anxiety and depression causing him to be afraid to be in public.

106.    Mr. Ordonye has also suffered damage to his personal and professional reputations as he was taken into custody when undergoing a mental health crisis, as well as having such information paraded in front of his colleagues at the Thibodaux Police Department.

107.    The extreme and outrageous intentional and negligent acts of defendants, as set forth herein, combined to cause deprivations of Plaintiff's constitutional and civil rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1983 and 1988, as well as state tort laws under La. C.C. art. 2315, 2320, 2324; and state constitutional right to privacy under La. Const. Art. 1, Sec. 5.

108.    Plaintiff seeks monetary damages in the following categories:

        A.    Mental Anguish, past, present, and future;

        B.    Post-traumatic stress disorder;

        C.    Embarrassment, humiliation and loss of enjoyment of life;

      D.        Damage to professional and personal reputation;

      E.        Attorney's fees; and

      F.        Punitive Damages.

109.   Plaintiff demands a Trial by Jury on all issues herein triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, **TAMMY BILLIOT, on behalf of T.Q.**, prays that after due proceedings are conducted and all legal delays have expired that this Honorable Court render a judgment herein in her favor against Defendants, in their official and individual capacities, and the City of Thibodaux jointly, and/or *in solido*, for the following:

1. Find that Defendants Zeringue, Sutton, Gaudet, and the City of Thibodaux, individually deprived T.Q. of a civil right in violation of 42 U.S.C. § 1983;

2. Find Defendants Zeringue, Sutton, Gaudet, and the City of Thibodaux, individually and collectively violated T.Q. Fourth Amendment Right against due process rights of his and illegal search and seizure of his private medical information;

3. Enter judgment against the Defendants for actual damages, including, but not limited to attorney's fees and other litigation costs incurred by the Mr. Ordonye in defending such claims, lost income resulting from time spent defending against the such claims, damage to Plaintiff's reputation and mental anguish and emotional distress, suffered by Plaintiff due to the actions of Defendants;

4. Find that Defendants Zeringue, Sutton, Gaudet, and the City of Thibodaux committed assault, battery, intentional infliction of emotional distress against T.Q. and enter an award of damages against them in favor of T.Q.;

5. Find that the Defendants are liable for their tortious conduct (Counts 4-5) under La. Civ. Code art. 2315 and enter an award of damages against them in favor of T.Q.;

6. For attorney's fees and other litigation costs incurred by the Plaintiff in this action to be allocated among the Defendants, pursuant to 42 U.S.C. §§ 1983 and 1988, and/or other statutory bases as the Court deems appropriate; and,

7. For such other relief, equitable or otherwise, to which the Plaintiff may be entitled.

Respectfully Submitted,

/s/ Shermin S. Khan_____

**THE KHAN LAW FIRM, L.L.C.**
Shermin S. Khan (Bar Roll No. 37748)
2714 Canal Street, Suite 300
New Orleans, LA 70119
s.khan@sklawla.com
Telephone: (504) 354-9608
Facsimile: (504) 459-2918
*Attorney for Plaintiff, Tammy Billiot*

**Response to Resistance Review Board Members Vote Sheet.**

**Officer's name:** _John Sutton_

_____  _____

_____  _____

_____  _____

_____  _____

**Place a check in the box that applies to your decision for the incident that involves the above named Officer or Officers.**

☐ **The member's actions were within Department Policy and procedure.**

☒ **The member's actions were in violation of Department Policy and procedure.**

**Board Member's Name** _Sgt Josoph Lonnibus_ .

**Comments:** _The Actions of Force used on this Juwonile_

_appeared to be excussive as this chuvenile was way smaller_

_than this officer and meso could dosorvu this arm clomacy_

_around 3rd ouvonice's neck._

_____

_Homan Police Dommartment_

**Response to Resistance Review Board Members Vote Sheet.**

**Officer's name:** Capt. John Sutton Se

_____    _____

_____    _____

_____    _____

_____    _____

**Place a check in the box that applies to your decision for the incident that involves the above named Officer or Officers.**

☐ **The member's actions were within Department Policy and procedure.**

☑ **The member's actions were in violation of Department Policy and procedure.**

**Board Member's Name** Lt. Erick Taylor                          .

**Comments:** These actions were in violation of this kid's right,

_____

_____

_____

_____

Lt. Erick Taylor #1130

**Response to Resistance Review Board Members Vote Sheet.**

**Officer's name:** John Sutton

_____    _____

_____    _____

_____    _____

_____    _____

**Place a check in the box that applies to your decision for the incident that involves the above named Officer or Officers.**

☐ **The member's actions were within Department Policy and procedure.**

☒ **The member's actions were in violation of Department Policy and procedure.**

**Board Member's Name** Lt. Brandon Losser #1133

**Comments:** Ill. Search violating rights and Ill. use of Force. Cpt. Sutton should be deciplened for his actions.

_____

_____

#1133   Lt. Brandon Losser Assumption S.O

**Response to Resistance Review Board Members Vote Sheet.**

**Officer's name:** _CAPT. JOHN SUTTON JR_

_____    _____

_____    _____

_____    _____

_____    _____

**Place a check in the box that applies to your decision for the incident that involves the above named Officer or Officers.**

☐ **The member's actions were within Department Policy and procedure.**

☑ **The member's actions were in violation of Department Policy and procedure.**

**Board Member's Name** _SGT LEEMAN HOWARD_ .

**Comments:** _EXCESSIVE FORCE USED THAT WASN'T NECESSARY. MUCH SMALLER, YOUNGER SUSPECT THAT COULD HAVE BEEN EASILY OVER-POWERED IN A MUCH SAFER MANNER. HAND WAS DEFINATELY OVER NECK/THROAT AREA OF SUSPECT. I WOULD BE FURIOUS IF MY CHILD WAS HANDLED THIS WAY._

_____    SGT. L. HOWARD   LSP-C

**Thibodaux Police Department**
Policy Manual

# Use of Force Review Boards

### 301.1  PURPOSE AND SCOPE
This policy establishes a process for the Thibodaux Police Department to review the use of force by its members.

This review process shall be in addition to any other review or investigation that may be conducted by any outside or multi-agency entity having jurisdiction over the investigation or the evaluation of the use of force.

### 301.2  POLICY
The Thibodaux Police Department will objectively evaluate the use of force by its members to ensure that their authority is used appropriately and consistent with training and policy.

### 301.3  REMOVAL FROM LINE DUTY ASSIGNMENT
Generally, whenever a member's actions or use of force in an official capacity, or while using department equipment, results in death or very serious injury to another, that member will be placed in a temporary administrative assignment pending an administrative review. The Chief of Police may exercise discretion and choose not to place a member in an administrative assignment.

### 301.4  REVIEW BOARD
The Use of Force Review Board will review each use of force administered by a member of the Thibodaux Police Department.

The Internal Affairs Detective shall preside over each meeting and shall serve as the Board's advisory chairperson.

The Internal Affairs Detective shall only vote to break a tie among the board members.

The Internal Affairs Detective shall submit a written report of the boards findings to the Chief of Police.

#### 301.4.1  COMPOSITION OF THE BOARD
The Use of Force Review Board shall consist of four (4) members, two (2) of whom shall be employees of the Thibodaux Police Department.

Board members shall be appointed by, and serve at the leisure of, the Chief of Police.

- A Captain of the Thibodaux Police Department and/or a Captain from another outside Law Enforcement Agency.

- A Lieutenant of the Thibodaux Police Department and/or a Lieutenant from another outside Law Enforcement Agency.

- A Sergeant, Officer or other member of the Thibodaux Police Department and/or another outside Law Enforcement Agency.

Copyright Lexipol, LLC 2024/04/25, All Rights Reserved.
Published with permission by Thibodaux Police Department

Thibodaux Police Department
Policy Manual

## Use of Force Review Boards

- A representative of the Louisiana State Police Troop C.

### 301.4.2  RESPONSIBILITIES OF THE BOARD

The Use of Force Review Board is empowered to conduct an administrative review and inquiry into the circumstances of an incident.

The board members may request further investigation, request reports be submitted for the board's review, call persons to present information and request the involved member to appear. The involved member will be notified of the meeting of the board and may choose to have a representative through all phases of the review process.

The board does not have the authority to recommend discipline.

The Chief of Police will determine whether the board should delay its review until after completion of any criminal investigation, review by any prosecutorial body, filing of criminal charges, the decision not to file criminal charges or any other action. The board should be provided all relevant available material from these proceedings for its consideration.

The review shall be based upon those facts which were reasonably believed or known by the officer at the time of the incident, applying any legal requirements, department policies, procedures and approved training to those facts. Facts later discovered but unknown to the involved member at the time shall neither justify nor call into question a member's decision regarding the use of force.

Any questioning of the involved member conducted by the board will be in accordance with Thibodaux Police Department disciplinary procedures, the Personnel Complaints Policy, the current employment agreement and any applicable state or federal law.

The board shall make one of the following recommended findings:

    (a)   The member's actions were within department policy and procedure.

    (b)   The member's actions were in violation of department policy and procedure.

A recommended finding requires a majority vote of the board. The board may also recommend additional investigations or reviews, such as disciplinary investigations, training reviews to consider whether training should be developed or revised, and policy reviews, as may be appropriate. The board chairperson will submit the written recommendation to the Chief of Police.

The Chief of Police shall review the recommendation, make a final determination as to whether the member's actions were within policy and procedure, and determine whether any additional actions, investigations or reviews are appropriate. If the Chief of Police concludes that discipline should be considered, a disciplinary process will be initiated.

At the conclusion of any additional reviews, copies of all relevant reports and information will be filed with the Chief of Police.

Copyright Lexipol, LLC 2024/04/25, All Rights Reserved.
Published with permission by Thibodaux Police Department